

FILED
IN OPEN COURT

SEP = 8 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Criminal No. 1:11CR447 |
| | ) | |
| | ) | **Count 1**: 18 U.S.C. § 371 - |
| | ) | Conspiracy to Commit Copyright |
| v. | ) | Infringement |
| | ) | |
| | ) | **Counts 2 - 5**: 18 U.S.C. §§ 2, 2319; |
| | ) | 17 U.S.C. § 506 - |
| | ) | Criminal Copyright Infringement By |
| HANA AMAL BESHARA | ) | Distributing a Copyrighted |
| (a/k/a "Phara" and "Phara0hess"), | ) | Work on a Computer Network & |
| MATTHEW DAVID HOWARD SMITH | ) | Aiding and Abetting of Criminal |
| (a/k/a "Dead1ne"), | ) | Copyright Infringement |
| JOSHUA DAVID EVANS | ) | |
| (a/k/a "Wadswerth"), | ) | **Count 6**: 18 U.S.C. §§ 2, 2319; |
| JEREMY LYNN ANDREW | ) | 17 U.S.C. § 506 - |
| (a/k/a "Htrdfrk"), and | ) | Criminal Copyright Infringement By |
| ZOI MERTZANIS | ) | Electronic Means & |
| (a/k/a "Tik"), | ) | Aiding and Abetting of Criminal |
| Defendants | ) | Copyright Infringement |

## INDICTMENT

SEPTEMBER 2011 TERM - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

I. <u>Introduction</u>

At all times relevant to this Indictment:

**A.** **The NinjaVideo Conspiracy**

1.     Beginning in approximately February of 2008 and continuing to June 30, 2010,

the Internet website NinjaVideo.net was operated by a group of individuals from locations

around the world. NinjaVideo.net had millions of visitors and provided those visitors with the

ability to illegally download infringing copies of copyrighted movies (many of which were still

playing in theaters, and some of which had not yet been released in movie theaters), as well as television programs, in high-quality formats.

2.      Visitors to the NinjaVideo.net website could download much of the infringing copyrighted material for free; however, for a minimum "donation" of $25.00, visitors obtained a "premium" membership and gained access to additional copyrighted material, including a wider range of movies, comic books, and computer software. "Premium" members also obtained the right to request specific content from the administrators of the NinjaVideo.net website. The content available on NinjaVideo.net was provided by "uploaders" who located pirated copies of copyrighted works and made the files available on the Internet for unlawful reproduction and distribution by members of the conspiracy.

3.      During the operation of NinjaVideo.net, members of the NinjaVideo conspiracy received proceeds of more than $500,000 from their illegal conduct, while unlawfully distributing millions of dollars in infringing copies of copyrighted works.

4.      From December 2009 until June 2010, agents from Homeland Security Investigations ("HSI"), operating from the National Intellectual Property Rights Coordination Center in Arlington, Virginia, within the Eastern District of Virginia, utilized NinjaVideo.net in an undercover capacity. During that time, the NinjaVideo conspiracy made pirated movies available to an undercover agent. The agent subsequently downloaded forty-four (44) of these movies to a computer located in Arlington, Virginia; all of the movies were confirmed to be infringing copies of copyrighted motion pictures. At the time they were distributed by the NinjaVideo conspiracy, one (1) of the pirated copyrighted movies downloaded by the undercover agent had not yet been released in theaters in the United States; forty (40) of the copyrighted movies had been released in U.S. theaters but had not yet been released on DVD; and three (3) of

2

the movies had already been released on DVD. These distributions by the NinjaVideo conspiracy of infringing copies of valuable copyrighted works were not authorized by the copyright holders and were clearly marked as products from known Internet piracy groups.

**B.     Defendants**

5.     HANA AMAL BESHARA (a/k/a "Phara", "Phara0hess"), a resident of New Jersey, was one of the founders of NinjaVideo and served as the primary day-to-day administrator of the NinjaVideo.net website. At various times during the course of the conspiracy, BESHARA supervised the group's forum board (where members of the conspiracy discussed the operations of NinjaVideo.net), supervised the moderators who policed the NinjaVideo.net website, publicized the website, negotiated contracts and business deals with third parties, and assisted NinjaVideo.net visitors and users. BESHARA made regular payments for computer servers utilized by NinjaVideo.net, and also distributed proceeds to some of her co-conspirators.

6.     MATTHEW DAVID HOWARD SMITH (a/k/a "Dead1ne"), a resident of North Carolina, was another founder of NinjaVideo and administrator of the NinjaVideo.net website. SMITH paid for and registered many Internet domain names for the benefit of the NinjaVideo conspiracy, including most notably NinjaVideo.net. SMITH located (and, where necessary, paid for) servers to be used as part of the conspiracy. SMITH primarily designed many of the operational elements of the website, including sophisticated tools and scripts that enabled NinjaVideo.net visitors to view and download the website's high-quality copyrighted content (in particular, the "NinjaVideo Helper applet"). SMITH contacted Internet advertising entities and entered into agreements wherein those entities would place advertisements on the NinjaVideo.net website. SMITH received this advertising revenue, as well as "donations" from NinjaVideo.net

3

members, and then distributed hundreds of thousands of dollars in proceeds to his co-conspirators.

7.     JOSHUA DAVID EVANS (a/k/a "Wadswerth"), a resident of the state of Washington, served as one of the most active uploaders of copyrighted material for the NinjaVideo.net website. EVANS supervised most of the North American-based uploaders, including directing uploaders to locate specific infringing copyrighted content for the NinjaVideo.net website. EVANS also conducted background checks on individuals requesting access to communications with the top administrators of NinjaVideo.net.

8.     JEREMY LYNN ANDREW (a/k/a "Htrdfrk"), a resident of Oregon, held the title of "Head of Security" for NinjaVideo.net. ANDREW assisted website visitors with technical issues, including issues that arose from the NinjaVideo Helper applet, and assisted with issues related to the NinjaVideo.net servers, including monitoring for unauthorized access to servers and searching for additional content servers for the conspiracy.

9.     ZOI MERTZANIS (a/k/a "Tik"), a resident of Greece, served as another of the most active uploaders of copyrighted material for the NinjaVideo.net website. MERTZANIS supervised most of the European-based uploaders, including directing uploaders to locate specific infringing copyrighted content for the NinjaVideo.net website.

## COUNT 1

### (18 U.S.C. § 371 - Conspiracy)

THE GRAND JURY CHARGES THAT:

10.     Paragraphs 1 through 9 are re-alleged and incorporated as if set forth here in their entirety.

11.     Beginning in approximately February 2008 and continuing until June 30, 2010, in the Eastern District of Virginia and elsewhere, the defendants,

**HANA AMAL BESHARA,**

**MATTHEW DAVID HOWARD SMITH,**

**JOSHUA DAVID EVANS,**

**JEREMY LYNN ANDREW, and**

**ZOI MERTZANIS**

each knowingly and intentionally combined, conspired, and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to 1) willfully infringe, for purposes of private financial gain, ten (10) or more copies of one (1) or more copyrighted works with a total retail value of more than $2,500 within a 180-day period, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1), and 2) willfully infringe, for purposes of private financial gain, a copyright by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, when the defendants knew and should have known that the work was intended for commercial distribution, in violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States Code, Section 2319(d)(2).

## Ways, Manner, and Means of the Conspiracy

In furtherance of the conspiracy, defendants and others known and unknown to the Grand Jury employed, among others, the following manner and means:

12.    It was part of the conspiracy that the defendants and their co-conspirators operated NinjaVideo.net. NinjaVideo.net was an Internet site that provided users with the ability to illegally download infringing copies of copyrighted movies (many of which were still playing in movie theaters, and some of which had not yet been released in movie theaters), television programs, and computer software, in high-quality formats.

13.    It was further part of the conspiracy that visitors to the NinjaVideo.net website could download much of the infringing copyrighted material for free; however, for a minimum "donation" of $25.00, visitors obtained a "premium" membership and gained access to additional copyrighted material, including a wider range of movies, comic books, and computer software. "Premium" members also obtained the right to request specific content from the administrators of the NinjaVideo.net website (which included several of the defendants).

14.    It was further part of the conspiracy that members of the conspiracy knowingly obtained unauthorized copies of copyrighted works. At all times relevant to this Indictment, the members of the conspiracy knew well that they did not have license, permission, authorization, or other authority from the owners of the copyrighted works to reproduce and distribute them, including making them available over the Internet for download and distributing them over the Internet. In particular, the content available on NinjaVideo.net was provided by members of the conspiracy called "uploaders," who located pirated copies of copyrighted works and made the files available on computer networks for unlawful reproduction and distribution by members of the conspiracy.

6

15.     It was further part of the conspiracy that the conspiracy derived income from advertising that was placed on the NinjaVideo.net website, as well as from NinjaVideo.net member "donations."  Between February of 2008 and June 30, 2010, the defendants collectively received more than $500,000.00 from advertising and "donations."

16.     It was further part of the conspiracy that the NinjaVideo.net website, forum board, and content were hosted on various servers in the Netherlands; France; Chicago, Illinois; and Ashburn, Virginia (the last of which is located in the Eastern District of Virginia).

17.     It was further part of the conspiracy that the infringing copies of copyrighted works on NinjaVideo.net were made available to millions of visitors each month.  For example, during the last week of June 2010, NinjaVideo.net fulfilled more than 309,428 movie requests and 633,458 television program requests.

### Overt Acts

18.     It was further part of the conspiracy that the following acts in furtherance of and to effect the objects of the above-described conspiracy were committed in the Eastern District of Virginia and elsewhere:

a.     From at least January 4, 2010 until June 30, 2010, infringing copies of copyrighted materials were stored and accessed by members of the conspiracy at Carpathia Hosting in Ashburn, Virginia, which is in the Eastern District of Virginia.

b.    On various dates, a member of the conspiracy received proceeds of the conspiracy through Paypal from NinjaVideo.net users residing in the Eastern District of Virginia, including any one of the following:

    1)    On June 3, 2010, user NS from Herndon, Virginia, made a payment of $3.33;

    2)    On June 4, 2010, user JE from Herndon, Virginia, made a payment of $50.00; and

    3)    On June 6, 2010, user DS from Fairfax, Virginia, made a payment of $20.00.

c.    From December 17, 2009 until June 16, 2010, HSI agents, operating from the National Intellectual Property Rights Coordination Center in Arlington, Virginia, within the Eastern District of Virginia, downloaded 44 pirated motion pictures that were made available for reproduction and distribution by members of the conspiracy from servers at Carpathia Hosting in Ashburn, Virginia, within the Eastern District of Virginia, and elsewhere.

d.    On various dates, members of the conspiracy made infringing copyrighted materials available on Internet-connected computer servers located at Carpathia Hosting in Ashburn, Virginia, within the Eastern District of Virginia, for download by members of the conspiracy and the public, including any of the following examples:

    1)    On or about January 4, 2010, members of the conspiracy infringed the copyright of the motion picture "Avatar" (which had been released in U.S. theaters on or about December 18, 2009, and would not be commercially distributed until on or about May 22, 2010) by making it available on publicly accessible servers at Carpathia Hosting and distributing it over the Internet without authorization;

    2)    On or about January 21, 2010, members of the conspiracy infringed the copyright of the motion picture "2012" (which had been released in U.S. theaters on or about November 13, 2009, and would not be commercially distributed until on or about March 2, 2010) by making it available on publicly accessible servers at Carpathia Hosting and distributing it over the Internet without authorization;

8

3)      On or about May 4, 2010, members of the conspiracy infringed the copyright of the motion picture "Iron Man 2" (which would not be released in U.S. theaters until on or about May 7, 2010, and would not be commercially distributed until on or about September 28, 2010) by making it available on publicly accessible servers at Carpathia Hosting and distributing it over the Internet without authorization; and

4)      On or about June 16, 2010, members of the conspiracy infringed the copyright of the motion picture "The A-Team" (which had been released in U.S. theaters on or about June 11, 2010, and would not be commercially distributed until on or about December 14, 2010) by making it available on publicly accessible servers at Carpathia Hosting and distributing it over the Internet without authorization.

e.      From on or about June 23, 2010 until June 30, 2010, members of the conspiracy infringed by electronic means, including by means of the Internet, more than ten (10) copies of one or more copyrighted works which had a total retail value of more than $2,500 for purposes of private financial gain.

f.      On or about January 19, 2008, defendant SMITH made a payment to Ecatel Ltd. in the Netherlands for Internet hosting services associated with NinjaVideo.net.

g.      On or about January 28, 2008, defendant SMITH received an advertising payment for advertising on NinjaVideo.net from Google AdSense.

h.      On or about February 1, 2008, defendant SMITH received an advertising payment for advertising on NinjaVideo.net from AdBrite.

i.      On or about March 3, 2008, defendant SMITH and his co-conspirators continued to operate NinjaVideo.net, despite SMITH receiving an electronic mail message on that date from Google AdSense that its advertisements on NinjaVideo.net had been disabled because the site was illegally distributing copyrighted materials.

9

j.      On or about March 20, 2008, defendant SMITH and his co-conspirators continued to operate NinjaVideo.net, despite SMITH receiving a second electronic mail message on that date from Google AdSense that its advertisements on NinjaVideo.net had been disabled because the site was illegally distributing copyrighted materials.

k.      On or about May 16, 2008, defendant SMITH received an advertising payment for advertising on NinjaVideo.net from Mpire Corp.

l.      On or about June 2, 2008, defendant SMITH made a payment to LeaseWeb in the Netherlands for Internet hosting services associated with NinjaVideo.net.

m.      On or about October 6, 2008, defendant SMITH made a payment to his co-conspirator BESHARA for her involvement in NinjaVideo.net.

n.      On or about November 8, 2008, defendant SMITH made a payment to his co-conspirator EVANS for his involvement in NinjaVideo.net.

o.      On or about December 4, 2008, defendant SMITH made a payment to his co-conspirator MERTZANIS for her involvement in NinjaVideo.net.

p.      On or about February 14, 2009, defendant SMITH made a payment to his co-conspirator ANDREW for his involvement in NinjaVideo.net.

q.      On or about February 17, 2009, defendant BESHARA made a payment to LeaseWeb in the Netherlands for Internet hosting services associated with NinjaVideo.net.

r.      On or about April 23, 2009, defendant BESHARA made individual payments to her co-conspirators ANDREW, EVANS, and MERTZANIS for their involvement in NinjaVideo.net.

s.      On or about January 21, 2010, defendant BESHARA received an advertising payment for advertising on NinjaVideo.net from AdBrite.

10

t.      On or about February 1, 2010, defendant BESHARA received an advertising payment for advertising on NinjaVideo.net from OpenX.

(All in violation of Title 18, United States Code, Section 371).

## COUNT 2

(18 U.S.C. §§ 2, 2319; 17 U.S.C. § 506 -
Criminal Copyright Infringement By Distributing a Copyrighted Work on a
Computer Network & Aiding and Abetting Criminal Copyright Infringement)

THE GRAND JURY CHARGES THAT:

19.     Paragraphs 1 through 18 are re-alleged and incorporated as if set forth here in their

entirety.

20.     On or about January 4, 2010, in the Eastern District of Virginia and elsewhere, the

defendants,

### HANA AMAL BESHARA,

### MATTHEW DAVID HOWARD SMITH,

### JOSHUA DAVID EVANS,

### JEREMY LYNN ANDREW, and

### ZOI MERTZANIS

did willfully, and for purposes of private financial gain, infringe a copyright by distributing a

work being prepared for commercial distribution, to wit, the motion picture "Avatar" (which had

been released in U.S. theaters on or about December 18, 2009, and would not be commercially

distributed until on or about May 22, 2010) by making it available on a computer network

accessible to members of the public, when defendants knew, and should have known, that the

work was intended for commercial distribution.


(All in violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States
Code, Sections 2 & 2319(d)(2))

12

## COUNT 3

(18 U.S.C. §§ 2, 2319; 17 U.S.C. § 506 -
Criminal Copyright Infringement By Distributing a Copyrighted Work on a
Computer Network & Aiding and Abetting Criminal Copyright Infringement)

THE GRAND JURY CHARGES THAT:

21.     Paragraphs 1 through 18 are re-alleged and incorporated as if set forth here in their

entirety.

22.     On or about January 21, 2010, in the Eastern District of Virginia and elsewhere,

the defendants,

### HANA AMAL BESHARA,

### MATTHEW DAVID HOWARD SMITH,

### JOSHUA DAVID EVANS,

### JEREMY LYNN ANDREW, and

### ZOI MERTZANIS

did willfully, and for purposes of private financial gain, infringe a copyright by distributing a

work being prepared for commercial distribution, to wit, the motion picture "2012" (which had

been released in U.S. theaters on or about November 13, 2009, and would not be commercially

distributed until on or about March 2, 2010) by making it available on a computer network

accessible to members of the public, when defendants knew, and should have known, that the

work was intended for commercial distribution.

(All in violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States
Code, Sections 2 & 2319(d)(2))

## COUNT 4

(18 U.S.C. §§ 2, 2319; 17 U.S.C. § 506 -
Criminal Copyright Infringement By Distributing a Copyrighted Work on a
Computer Network & Aiding and Abetting Criminal Copyright Infringement)

THE GRAND JURY CHARGES THAT:

23.    Paragraphs 1 through 18 are re-alleged and incorporated as if set forth here in their entirety.

24.    On or about May 4, 2010, in the Eastern District of Virginia and elsewhere, the defendants,

### HANA AMAL BESHARA,

### MATTHEW DAVID HOWARD SMITH,

### JOSHUA DAVID EVANS,

### JEREMY LYNN ANDREW, and

### ZOI MERTZANIS

did willfully, and for purposes of private financial gain, infringe a copyright by distributing a work being prepared for commercial distribution, to wit, the motion picture "Iron Man 2" (which would not be released in U.S. theaters until on or about May 7, 2010, and would not be commercially distributed until on or about September 28, 2010) by making it available on a computer network accessible to members of the public, when defendants knew, and should have known, that the work was intended for commercial distribution.

(All in violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States Code, Sections 2 & 2319(d)(2))

14

## COUNT 5

(18 U.S.C. §§ 2, 2319; 17 U.S.C. § 506 -
Criminal Copyright Infringement By Distributing a Copyrighted Work on a
Computer Network & Aiding and Abetting Criminal Copyright Infringement)

THE GRAND JURY CHARGES THAT:

25.    Paragraphs 1 through 18 are re-alleged and incorporated as if set forth here in their

entirety.

26.    On or about June 16, 2010, in the Eastern District of Virginia and elsewhere, the

defendants,

### HANA AMAL BESHARA,

### MATTHEW DAVID HOWARD SMITH,

### JOSHUA DAVID EVANS,

### JEREMY LYNN ANDREW, and

### ZOI MERTZANIS

did willfully, and for purposes of private financial gain, infringe a copyright by distributing a

work being prepared for commercial distribution, to wit, the motion picture "The A-Team"

(which had been released in U.S. theaters on or about June 11, 2010, and would not be

commercially distributed until on or about December 14, 2010) by making it available on a

computer network accessible to members of the public, when defendants knew, and should have

known, that the work was intended for commercial distribution.

(All in violation of Title 17, United States Code, Section 506(a)(1)(C) and Title 18, United States
Code, Sections 2 & 2319(d)(2))

## COUNT 6

(18 U.S.C. §§ 2, 2319; 17 U.S.C. § 506 -
Criminal Copyright Infringement By Electronic Means
& Aiding and Abetting Criminal Copyright Infringement)

THE GRAND JURY CHARGES THAT:

27.     Paragraphs 1 through 18 are re-alleged and incorporated as if set forth here in their

entirety.

28.     During the 180-day period ending on June 30, 2010, in the Eastern District of

Virginia and elsewhere, the defendants,

**HANA AMAL BESHARA,**

**MATTHEW DAVID HOWARD SMITH,**

**JOSHUA DAVID EVANS,**

**JEREMY LYNN ANDREW, and**

**ZOI MERTZANIS**

did willfully, and for purposes of private financial gain, infringe the copyrights of copyrighted

works, that is, motion pictures, television programs, and software, by the reproduction and

distribution over the Internet, during a 180-day period, of ten (10) or more copies of one (1) or

more copyrighted works which had a total retail value of more than $2,500.

(All in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States
Code, Section 2319(b)(1))

16

## FORFEITURE ALLEGATION ONE

Pursuant to Rule 32.2(a), the defendants are hereby notified that, if any of them are convicted of any of the offenses charged in Counts 1 through 6 above, he/she shall forfeit to the United States, pursuant to 18 U.S.C. § 2323(b), any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of an offense involving 18 U.S.C. § 2319, and any property that was used or intended to be used to commit or facilitate the commission of an offense involving 18 U.S.C. § 2319. In addition to any computer equipment seized by law enforcement, such property shall include any intellectual property facilitating the offense, including, but not limited to, any Internet domain names utilized as part of the offense.

If any property being subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant –

a.  cannot be located upon the exercise of due diligence;
b.  has been transferred or sold to, or deposited with, a third party;
c.  has been placed beyond the jurisdiction of the court;
d.  has been substantially diminished in value; or
e.  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any properties of the defendants up to $505,000.00 in United States Currency.

A TRUE BILL:

Neil H. MacBride
United States Attorney

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

Jay V. Prabhu
Lindsay A. Kelly
Assistant United States Attorneys

Foreperson of the Grand Jury

Glenn Alexander
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section